# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

ARTHUR BOSTICK, SR. and LILLIE BOSTICK,　　　　　　　　PLAINTIFFS,

VS.　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 2:06CV168-P-A

CITY OF HORN LAKE, ET AL.,　　　　　　　　　　　　　　　DEFENDANTS.

## MEMORANDUM OPINION

This matter comes before the court upon the defendant officers' (in their individual capacities) second motion for summary judgment based on the doctrine of qualified immunity [93]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

In its April 3, 2008 Opinion and Order, the court granted in part and denied in part the individual defendants' first motion for summary judgment based upon the doctrine of qualified immunity. In this regard, the court: (1) dismissed with prejudice the claims of Shely Downing for failure to create a genuine issue of material fact; (2) dismissed without prejudice the plaintiffs' claims against Alex Coker for failure to serve process; and (3) dismissed with prejudice the plaintiffs' § 1983 unreasonable search claim against the individual defendants, concluding that they were immune from suit under the doctrine of qualified immunity. The court denied the individual defendants' first motion for summary judgment as to the plaintiffs' § 1983 excessive force claim while granting the plaintiff's Rule 56(f) motion to suspend ruling upon the defendants' motion insofar as the court allowed the parties to conduct discovery limited to the issues of "the alleged kicking of Mr. Bostick and the alleged throwing on the ground of Mrs. Bostick in support of their excessive force claim."

1

After conducting the subject discovery, the individual defendants move once more for summary judgment, arguing they are immune from suit under the doctrine of qualified immunity.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual

issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.* at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.* at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Qualified Immunity Standards**

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983.

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). When "evaluating § 1983 claims based on allegedly unconstitutional conduct by state actors [courts] should conduct a two-prong inquiry to determine whether the state actors are entitled to qualified immunity. 'The first inquiry must be whether a constitutional right would have been violated on the facts alleged.' 'If a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.' Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon*, 305 F.3d at 322-323 (citing *Siegert v. Gilley*, 500 U.S. 226, 232-34 (1991); *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

Qualified immunity is an "*immunity from suit* rather than a mere defense to liability." *Michell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, "the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery ... as [i]nquiries of this kind can be peculiarly disruptive of effective government." *McClendon*, 305 F.3d at 323 (internal citations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)). Therefore, "adjudication of qualified immunity claims should occur 'at the earliest possible stage in litigation.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). At a stage earlier than summary judgment, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective reasonableness.' On summary judgment, however, the plaintiff can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry." *Behrens v. Pelletier*, 516

U.S. 299, 309 (1996).

**C. Analysis**

**1. Officers Worsham, Vrooman, and May**

After reviewing the briefs, the court concludes that it is undisputed that Defendants Shawn May, Scott Worsham, and William Vrooman did not participate in the entry of the Bostick's home. Furthermore, the plaintiffs in their response brief do not mention these officers. Accordingly, the court concludes that these officers are immune from suit and that the plaintiffs' claims against them in their individual capacities should be dismissed with prejudice.

**2. Officers Rowell, Beshears, Whaley**

It is undisputed that: (1) Lt. Tory Rowell had no physical contact with the plaintiffs; (2) Captain Shannon Beshears did not participate in the initial entry of the Bostick's home and had no physical contact with the Bosticks; and (3) Chief Darryl Whaley was never present during the execution of the search warrant upon the Bostick's home.

The plaintiffs argue that these officers are nevertheless liable for their § 1983 excessive force claim because, as supervisory officers, they took no action to prevent the other officers from using excessive force.

The defendants are correct that "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates ... on any theory of vicarious or *respondeat superior* liability. Rather, Plaintiffs must show that the conduct of the supervisors denied [the plaintiffs their] constitutional rights." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). To show that the conduct of the supervisors denied their constitutional rights, the plaintiffs must allege a failure to

train or supervise claim wherein they must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." They must also demonstrate that these supervisory officials "had subjective knowledge of a serious risk of harm" to the plaintiffs. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 255 (5th Cir. 2005).

The court concludes that the plaintiffs have demonstrated insufficient evidence to create a genuine issue of material fact for a failure to train claim, the elements of which are described above. Rather, the summation of the plaintiffs evidence in this regard is their allegation in their response brief that: "The two defendants in charge of the operation, Lieutenant Rowell and Captain Beshears, took no action to prevent their officers from using excessive force. Captain Beshears and Chief Whaley approved the amount of force used by the defendant officers during the mistaken search of the Bostick's home." Response Brief at 9.

Accordingly, the court concludes that Lt. Tory Rowell, Captain Shannon Beshears, and Chief Darryl Whaley, in their individual capacities, are immune from the plaintiffs' claims under the doctrine of qualified immunity and that the plaintiffs' claims against them should be dismissed with prejudice.

**3. Officers Mitchell and Scott**

Officers Jason Mitchell and Brad Scott aver that they had no physical contact with the Bosticks that could be considered excessive force. With regard to Officer Mitchell, Lillie Bostick states that either Officer Riggs or Officer Mitchell must have caused her injuries since Officer Riggs turned over custody to Officer Mitchell. As to Officer Scott, the team's medic, Lille Bostick states

6

that he put the zip-ties on her wrists "even after it was evident she was incapacitated by her injuries." Response Brief at 9.

Regarding Officer Mitchell, it is undisputed that Officer Riggs has admitted that he was the officer who initially saw, pursued, and subdued Mrs. Bostick, though he denies that he used excessive force. Accordingly, other than a mere allegation that Officer Mitchell could have been the one who caused her injuries because Officer Riggs turned over custody of her to Officer Mitchell, the plaintiff has failed to demonstrate sufficient evidence to survive summary judgment and the doctrine of qualified immunity as to Officer Mitchell.

Similarly, though the plaintiffs in their response brief cite Officer Scott's deposition wherein he admitted that he put the zip ties on Mrs. Bostick, though loosely on her wrists in front of her rather than behind her back, the plaintiff cites no evidence that Officer Scott used excessive force when restraining her. Nor have the plaintiffs shown that Officer Scott's method of restraining Mrs. Bostick was objectively unreasonable, given it is undisputed that from the officers' perspective, they were still in a "tactical situation" and given that objective unreasonableness is required to defeat qualified immunity. Accordingly, the court concludes that Officer Scott is immune from the plaintiff's claims which should therefore be dismissed with prejudice.

**4. Officers Riggs and Free**

Officer Robert Riggs has admitted that he was the officer who pursued and subdued Lillie Bostick. Furthermore, it is undisputed that Officer Kenny Free was the officer who initiated contact with Arthur Bostick and that Officer Riggs came inside Arthur's bedroom to assist Officer Free in subduing and restraining Arthur Bostick.

Officer Riggs avers that when he entered the home, he saw Lille Bostick begin to flee from

7

him despite his announcements that he was a police offer and that she should get on the ground. He denies that he used excessive force with Lille Bostick, and states that she fell on the ground on her own while trying to flee, and that any contact he had with her was inadvertent. He admits that had she not fallen down and had she continued to flee from him, he would have used the requisite amount of force necessary to subdue her pursuant to his training.

Officer Free avers that he had to physically restrain Arthur Bostick because he was resisting. It is undisputed that Officers Free and/or Officer Riggs used their knees upon Arthur Bostick's back to aid them in restraining him. It is also undisputed that the using of knees in subduing a suspect in and of itself is within the officers' training. In its prior Opinion, the court expressed concern about the alleged kicking of Arthur Bostick. Having reviewed the second round of briefs and depositions, it is readily apparent that Arthur denies that he was kicked and that Lille Bostick has essentially conceded that she did not see anyone actually kick her husband.

Nevertheless, the Bosticks aver that they never heard any of the officers identify themselves as police officers until after they were restrained. They also maintain that given the officers' physical appearance and the 4:00 a.m. darkness in the house, they could not ascertain that they were police by sight. It is undisputed that all of the officers were wearing camouflage uniforms and gas masks and were carrying assault weapons[1]. Shely Downing, the Bostick's granddaughter, testified that she heard the officers identify themselves as "Horn Lake Police" once when they first entered, but that she never heard them repeat themselves and believed that neither of her grandparents heard the officers identify themselves. She states that she tried to tell her grandparents they were the police and that her grandmother at some point realized they were police and told her husband, whereupon

---

[1] The gas masks were worn in anticipation of encountering methamphetamine fumes.

Arthur Bostick asked the officers if they were police. Arthur Bostick admits that he struggled with the officers, but maintains that after they pulled him out of bed with no warning, he did not know they were the police and could not tell by looking at them that they were the police. Rather, Arthur Bostick states that he believed the men to be intruders.

However, even if it were determined that the plaintiffs are correct in their recollection – *i.e.*, even if the officers did not adequately announce they were police officers – the officers would still be entitled to qualified immunity since, under the circumstances, they were not required to announce themselves at all. It is undisputed that the purpose of the subject search warrant was to locate a meth lab that the officers had reason to believe was actively "cooking" meth in one of the buildings located at 6764 Allen Drive. It is also undisputed that the officers had information that Minor Bostick and others present at 6764 Allen Drive were members of a motorcycle gang and were known to be armed and dangerous.

Though the search warrant states "you are hereby commanded to proceed at any time in the day or night to the place described above," it does not specifically indicate whether it is a knock-and-announce warrant or a "no-knock" warrant. Nevertheless, although the Fourth Amendment "generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers 'have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *U.S. v. Banks*, 540 U.S. 31, 36 (2003) (quoting *Richards v. Wisconsin*, 529 U.S. 385, 394 (1997))."The knock-and-announce rule is not required when law enforcement concerns outweigh personal privacy interests. The Supreme Court has left 'to the lower courts the task of determining the circumstances

under which an unannounced entry is reasonable under the Fourth Amendment.'" *U.S. v Cantu*, 230 F.3d 148, 151 (5th Cir. 2000) (internal citations omitted)."[L]aw enforcement officers are not required to announce their presence unless they ... find exigent circumstances that would make announcing their presence 'dangerous or futile, or ... would inhibit the effective investigation of the crime." *Id*. at 151 (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). "The requirement that law enforcement officers announce their presence is flexible and 'should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests.'" *Id*. at 152 (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)). "Courts must determine whether an unannounced entry is reasonable under the particular circumstances of the case and in light of law enforcement's actions as a whole." *Id*.

The court concludes that under the circumstances, the officers were justified in conducting a no-knock search, meaning also that they did not have to announce their presence. The expected situation involved an active session of cooking meth at the address covered by the warrant by people who were believed to be part of a motorcycle gang, armed and dangerous. "In order to justify the no-knock entry ... the police officers must have had a reasonable suspicion that the drugs could be readily destroyed or that announcing their presence would endanger their safety." *U.S. v. Washington*, 340 F.3d 222, 226 (5th Cir. 2003). Though the house they initially entered did not turn out to house the meth lab or Minor Bostick, the warrant covered all buildings at the address, and it is undisputed that the plaintiffs' home and their son's home were located at the same address. It is also undisputed that the other house did in fact contain a meth lab.

Accordingly, the plaintiffs have failed to meet their burden in demonstrating the inapplicability of the qualified immunity doctrine to their claims against not only Officers Riggs and

Free, but also the rest of the defendant officers in their individual capacities since the officers were not required to announce their presence. Though the outcome was tragic, when looking at the situation – as the court must – "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham v. Connor*, 490 U.S. 386, 396 (1989), the officers are entitled to qualified immunity in their individual capacity. They executed a valid search warrant, the house in question was covered by the warrant, and the suspected danger of violence and destruction of evidence by Minor Bostick and his associates rendered the warrant a no-knock warrant, thereby freeing the officers from the need to announce themselves when they entered Arthur and Lillie Bostick's home.

**5. The plaintiffs' motion to reconsider dismissal of § 1983 unreasonable search claim**

The plaintiffs have asked the court to reconsider its dismissal of their § 1983 unreasonable search claim as to the officers in their individual capacities on the basis of qualified immunity, arguing that not only was the entry an unreasonable search but also the manner in which the search was conducted. They argue that although the search warrant authorized the officers to execute the warrant "to proceed at any time in the day or night to the place described above and to search forthwith said place," it did not authorize them to enter without knocking. As stated above, however, the court concludes that the defendants have sufficiently established that a "no-knock" entry was legally justified. Since the officers were not required to knock or announce their presence, the defendant officers in their individual capacities are immune from plaintiffs' § 1983 unreasonable manner of search claim.

### III. CONCLUSION

For the reasons discussed above, the defendant officers' (in their individual capacities) second motion for summary judgment based on the doctrine of qualified immunity [93] is granted. Therefore, Jason Mitchell, Troy Rowell, Brad Scott, Shawn May, Shannon Beshears, Darryl Whaley, Scott Worsham, William Vrooman, Robert Riggs, and Kenny Free are immune from the plaintiffs' claims under the doctrine of qualified immunity. Thus, these claims should be dismissed with prejudice. The court notes that the conclusions reached in the instant Opinion and that of April 2, 2008 have no bearing on any of the plaintiffs' claims against all of the defendant officers in their official capacities and against the City of Horn Lake. Accordingly, an Order shall issue forthwith, **THIS DAY** of August 29, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE